HIGGINS and others vs. RIDDELL.

Sundry persons subscribed sums varying from fifty cents to ten dollars, for the purpose of assisting the members of an unincorporated musical association to erect a building for their use as a band. With these and other funds, do-

nated to or furnished by the members, a frame building was erected by the band on ground belonging to A, (who was one of said subscribers, and also one of the band,) under a lease for two years, which stipulated that the lessees, or a majority of them, might remove it at any time during said term. About a year after the building was erected, the association disbanded, and B, (one of the twelve persons who had composed the band,) purchased the interest of nine of the other members in the building, and threatened to remove it. In an action by A and several other of said subscribers for an injunction against such removal of the building, *Held*, that such subscriptions were absolute gifts to the members of the band, and that the building so erected was a chattel owned by them, as tenants in common, which they had a right to dispose of as they thought proper.

*Held*, also, that if A might otherwise have had a right to interfere with the disposition of the building in opposition to the wishes of B, who owned 10-12 of it, the terms of the lease precluded him from objecting to the removal of the building from his lot.

APPEAL from the Circuit Court for *Jefferson* County.

The case is stated in the opinion of the court.

*D. F. Weymouth*, for appellant.  [No argument on file.]

*J. M. Bingham*, for respondents, as to the relation in which the members of the band stood to the contributors, and as to the power of courts of equity to control the funds of voluntary associations, and to prevent a perversion of gifts to uses not intended by the donors, cited 4 John. Ch. R., 136; 1 Pars. on Con., 101, 372; Story's Eq. Jur., § 1190; Burr. Law Dic., title "Trusts;" 19 Vt., 410; 7 id., 241; 11 id., 296; 9 Wend., 401; 1 Sandf. Ch. R., 440–505; 2 id., 183; 2 Denio, 492; 6 Paige, 639; 3 Day, 450; 12 Conn., 113; 2 Hill, 543; 18 Pick., 318; 3 Barb. Ch. R., 242.  The lease given by Higgins does not estop him from interposing to prevent a perversion of the trust fund.

October 16.   *By the Court*, COLE, J.  We are of the opinion that the subscriptions mentioned in the pleadings in this case, were intended to be absolute gifts to the members of the band, to aid them in erecting a house in which they might practice music. This is the declared object of the subscriptions as stated in the subscription paper, a copy of which appears in the case.  It reads as follows: "Whereas, the Palmyra Brass Band propose to build a hall or house for the purpose of meeting to practice music, and for the general accommodation of said brass band, now, therefore, the undersigned, for the purpose of as-

sisting the said band to erect said building, do hereby agree to pay to the treasurer of said band, the sums set opposite to each of our respective names, at any time when demanded, on twenty days' notice."

It appears that the band was composed of twelve persons, who had no articles of association or copartnership, nor any legal organization, or corporate existence, but who voluntarily met together to practice instrumental music, and who were commonly known as the Palmyra Brass Band. Some fifty or sixty persons subscribed to the subscription paper, in sums varying from fifty cents to ten dollars. The appellant *Riddell*, and *Higgins*, one of the respondents, were members of the band, and each contributed to the erection of the building. The hall was built upon land leased of *Higgins*, by moneys paid upon the subscription, and other moneys donated to the band, and furnished by the members. After occupying the hall for a year or so, the band broke up and disbanded, and *Riddell* became the assignee, by purchase, of the interests in the building of nine members of the band, and, as owner of 10–12ths thereof, claims the right to control it. And one question arising in the case, is as to what were the nature and character of the subscriptions paid upon the subscription paper; were they intended to be absolute donations to the band, to enable them to build a hall in which to practice music, and which hall was to belong to the members composing the band, and to be disposed of as they might think proper, after they had ceased to use it as a place of meeting; or did the persons intend, who subscribed and paid fifty cents, one, two or three dollars, &c., to hold and retain an interest in the building to the extent of their respective subscriptions. We have adopted the former view of the case, and have no doubt but the moneys paid upon the subscription paper were intended to be, and in fact were, absolute gifts to the members of the band. It is the same, in our judgment, as though the subscriptions had been made to enable the members of the band to buy instruments of music, or uniforms, or any thing of that nature. In the latter case no one would contend that a subscriber was to have and retain an interest in the instruments or garments

which his subscription helped to buy. In the present case the donations were for the use and benefit of the members of the band, to aid them in erecting a hall in which to practice music. And this hall, thus created, was undoubtedly a chattel, and in the absence of all proof to the contrary, we must presume that it belonged to the members of the band in equal parts. The members were tenants in common in the chattel. This action was commenced by *Higgins* and several of those who had paid upon the subscription paper, for the purpose of restraining *Riddell* from removing the hall (which was a frame building) from the site upon which it had been erected. If our conclusion in regard to the nature of the subscriptions is correct, it follows that the subscribers had no interest whatever in the building, and therefore had no right to join in bringing this action. Their gifts being absolute, they have no right to set up a claim to the building in which their subscriptions were invested. In respect to *Higgins*, although he was a tenant in common with *Riddell* in the building, owning two-twelfths thereof, yet he cannot maintain the action, for one most conclusive reason. The building was erected upon his land. He gave a written lease of the lot, signed by himself and all the other members of the band, except two, who were minors, in which he demised the lot to the members of the band for two years from the date thereof, they yielding and paying therefor one dollar rent. And it was expressly agreed and covenanted in the lease by and between the parties thereto, that a majority of the band should have the right to remove the building off from the land at any time during the continuance of the lease, or within twenty days after the expiration thereof, and the lessees covenanted, among other things, that they would remove said building, and give quiet and peaceable possession of the lot, within the time specified, unless the lease should be renewed by the lessor. Now, in the face of this stipulation in the lease, what right has *Higgins* to interpose and say the building shall not be removed? If he would otherwise have had the right to control the property, and say what disposition should be made of it, as against the wishes of *Riddell*, who owned the greater portion of the building,

he certainly ought not to be permitted to object to its remov- al from his lot in view of the above condition in the lease. For he had required that the building should be removed at the expiration of the lease, and had agreed that a majority of the band might remove it before that time, if they should think proper to do so. And now for him to interpose and ask that the building shall not be removed, is flying in the face of his own covenant. We think his mouth should be shut upon that point.

The order of the circuit court, which restrained and enjoined the appellant from removing the building described in the complaint, must be reversed, and the cause remanded for further proceedings according to law.